**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 2, 2009

Charles R. Fulbruge III
Clerk

No. 08-20846
Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROBINSON JIMENEZ-LAINES,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas
No. 4:08-CR-598-1

Before DAVIS, SMITH, and OWEN, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Robinson Jimenez-Laines appeals the revocation of his supervised release and the order that he serve an additional term of imprisonment. Finding no reversible error, we affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I.

Over the past few years, Jimenez-Laines has maintained a steady presence in federal court. In February 2007, he, a Honduran national, was charged in the Western District of Texas with illegal reentry into the United States. He pleaded guilty and was sentenced to six months' incarceration and a one-year term of supervised release. Among the conditions of supervised release were that he not (again) reenter the United States illegally and that he not commit another federal, state, or local crime. In August 2007, shortly after he began supervised release, he was deported.

Jimenez-Laines did not abide by the conditions of supervised release. In February 2008, he was arrested in Houston for the unauthorized use of a motor vehicle and was determined to have again entered the United States illegally. That incident prompted actions in two federal courts.[1] In Houston, in the Southern District of Texas, where Jimenez-Laines had been arrested, he was charged with a new count of illegal reentry. Meanwhile, in Austin, in the Western District of Texas, where Jimenez-Laines had previously been convicted of illegal reentry, the probation office filed a petition to revoke supervised release asserting that Jimenez-Laines had violated conditions of release by committing a state crime (unauthorized use of a vehicle) and by illegally reentering the United States.

Jimenez-Laines made an initial appearance in the Southern District, where the court reviewed the revocation petition with him and confirmed that he understood the allegations and his rights. The court then transferred the revocation proceedings back to the Western District; the prosecution for the new illegal reentry offense continued in the Southern District. Sometime later, however, the revocation proceedings were sent back to the Southern District to be

---

[1] Jimenez-Laines was also prosecuted and convicted in Texas state court for the unauthorized use of a motor vehicle.

consolidated with the new illegal reentry prosecution.

In September 2008, Jimenez-Laines entered a plea of "true" on the revocation petition and a plea of "guilty" on the illegal reentry charge. In November 2008, the probation office for the Southern District filed a superseding petition for revocation that was substantially the same as the original petition from the Western District except that it contained updated information about Jimenez-Laines's guilty plea to the new illegal reentry offense and about his conviction in state court for the motor vehicle offense. It is uncertain from the record whether Jimenez-Laines ever received a copy of the superseding petition.

In December 2008, the district court held a joint sentencing hearing on the illegal reentry charge and the supervised release revocation. At the beginning of the hearing, the following exchange took place between defense counsel and the court:

> THE COURT:     Case Number 8-5998?
>
> MR. SANCHEZ:  Yes. Just to remind the Court, I believe we pled true back when we did the rearraignment initially [in September 2008], and you went over that part of it. I thought today we were just doing the punishment portion of it.
>
> THE COURT:     All right. This did look vaguely family as I was going through it, but I wasn't sure.
>
>                          All right. So we have done everything except determine the sentence on the revocation?
>
> MR. SANCHEZ:  Correct.
>
> THE COURT:     All right. Do you have anything you wish to say with respect to the sentence on the revocation case?
>
> MR. SANCHEZ:  Your Honor, really what I would say deals more with the second case, and it is kind of hard to separate them out together. It is all the same conduct, similar conduct anyway, given

3

the same sentence, so as far as the revocation, there is not too much to say to that.

THE COURT:    All right.  Well, the Court is going to revoke the defendant's supervised release in this case and sentence him to 12 months in prison, and that would run consecutively to any sentence imposed in the criminal Case Number 8-462, which we are going to take up next.

The court then proceeded to address the new illegal reentry offense.

On appeal, Jimenez-Laines asks us to vacate his revocation sentence and remand for resentencing.  He offers four grounds.  First, he claims the court failed to provide him with the constitutional minimum of due process.  Second, he contends that the court denied him the opportunity to allocute before it imposed the revocation sentence.  Third, he argues that the court did not properly take into account the sentencing factors set out in 18 U.S.C. § 3553(a).  Lastly, he reasons that the cumulative effect of these alleged errors is an independent ground for vacating the sentence.

II.

Before we address Jimenez-Laines's complaints, we consider a threshold question raised by the government: whether Jimenez-Laines waived, as distinguished from merely forfeited, his right to appeal the alleged errors at his revocation sentencing.  The government contends that defense counsel's statement that he "thought today we were just doing the punishment portion of [the revocation proceeding]" is a waiver of the kinds of claims Jimenez-Laines raises in this appeal.  Jimenez-Laines admits that he did not raise his current objections at the revocation sentencing but contends that this constituted forfeiture rather than waiver.

"Waiver and forfeiture are two different means by which a defendant may react to an error by the government in the proceedings in a case.  The doctrines

are similar, although distinct. Forfeiture is the failure to make the timely assertion of a right; waiver is the intentional relinquishment of a known right. Forfeited errors are reviewed under the plain error standard; waived errors are entirely unreviewable." *United States v. Arviso-Mata*, 442 F.3d 382, 384 (5th Cir. 2006) (citations omitted).

To distinguish between waiver and mere forfeiture, we ask whether the defendant has made an "intentional relinquishment or abandonment of a known right." *Id.* That is not the case here. Defense counsel's statement proves only what it means: that Jimenez-Laines's lawyer thought that the imposition of a sentence was the only remaining order of business in the revocation proceeding and not that Jimenez-Laines intended to abandon the sorts of claims he now brings on appeal.[2]

## III.

We turn to Jimenez-Laines's complaints regarding his revocation sentencing. Because he did not preserve any of these issues in the district court, they are forfeited and subject to plain error review. *Id.* "To establish plain error, the appellant must demonstrate that: (1) there was an error; (2) the error was plain; and (3) the error affected his or her substantial rights. Even [where] the three plain error criteria have been met, we retain the discretion to correct only those errors that seriously affect the fairness, integrity, or public reputation of judicial proceedings." *United States v. Wheeler*, 322 F.3d 823, 827 (5th Cir. 2003) (citations and quotations omitted).

---

[2] *Cf. Arviso-Mata*, 442 F.3d at 384 (holding that defense counsel's statement at sentencing that "we have no objections to the PSR" was insufficient to establish that defendant had waived his right later to challenge the calculation of his offense level in the presentence report ("PSR")). The lawyer there did note that he objected to a particular 16-level enhancement in the PSR, but other than that had no objections. What is relevant by analogy to this case, however, is that we allowed defendant later to challenge an entirely different part of the PSR guidelines calculation, a part to which defense counsel expressly stated he had no objection.

## A. Due Process

Jimenez-Laines claims the district court denied him the minimal requirements of due process for a revocation proceeding as set out in *Morrissey v. Brewer*, 408 U.S. 471, 488-89 (1972), and codified in Federal Rule of Criminal Procedure 32.1, which requirements "include (a) written notice of the claimed violations . . . (b) disclosure to the [defendant] of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body . . . and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking [supervised release]." *Morrissey*, 408 U.S. at 488-89. If the court determines that a defendant has admitted the alleged violations of supervised release, "the procedural safeguards announced in *Morrissey* are unnecessary," except that the defendant "must still be given an opportunity to offer mitigating evidence suggesting that the violation does not warrant revocation." *United States v. Holland*, 850 F.2d 1048, 1050-51 (5th Cir. 1988).

Jimenez-Laines claims the district court failed to ensure due process in his revocation proceedings because the record is silent about whether he received a copy of the superseding revocation petition and because it is not plain from the record that he understood the nature of the alleged violations or evidence against him. That is a mischaracterization of the revocation proceedings. During his initial appearance in the Southern District following his arrest in February 2008, Jimenez-Laines was informed of the revocation charges, and he confirmed that he understood them. Later, at the September 2008 hearing, during which he pleaded "true" to the revocation charges, he also pleaded guilty to the new illegal reentry offense and admitted to his conviction in Texas state court of unauthorized use of a motor vehicle, the two crimes that formed the basis of

the original and superseding petitions for revocation. During that hearing, Jimenez-Laines heard a lengthy recitation of the evidence the government intended to bring at trial if he did not plead guilty. He admitted the truth of the factual allegations.

Jimenez-Laines thus had actual notice of the revocation allegations against him and the evidence supporting them. There was no error, never mind plain error, for failure to disclose the allegations or evidence.

As for written notice of the superseding petition, Jimenez-Laines has not contended that he never received a copy of the petition—he only alleges that the record is silent as to whether he received it. Whether the court erred at all, however, makes no difference. Even if Jimenez-Laines never received a written copy of the superseding petition, its contents were substantially identical to those of the original petition to which he entered a valid plea of true. Under the third prong of plain-error review, Jimenez-Laines could not claim his substantial rights were affected. Moreover, because he admitted the violations charged in the revocation petition, he waived his right to challenge the adequacy of the revocation proceedings under *Morrissey*, other than the denial of allocution. *Id.*

## B. Allocution

Jimenez-Laines claims the district court denied him the right to allocute before imposing the revocation sentence. Federal Rule of Criminal Procedure 32.1(b)(2)(E) requires that a person subject to a revocation hearing have "an opportunity to make a statement and present any information in mitigation." The district court is required to "address the defendant personally and determine whether the defendant wishe[s] to make a statement . . . before imposing sentence." *United States v. Reyna*, 358 F.3d 344, 347 (5th Cir. 2004).

The court did not inform Jimenez-Laines about his right to allocute before it imposed the revocation sentence. Under the first two prongs of plain-error

review, that constituted error that was plain. *Cf. id.* at 351.

We next consider whether Jimenez-Laines's substantial rights were affected by the error. "Ordinarily, in order to establish that an error 'affects substantial rights' . . . a defendant must establish that the error was 'prejudicial,' i.e. that it affected the outcome of the district court proceedings." *Id.* at 350. In *Reyna*, however, we held that where a defendant is not given the opportunity to allocute, "and the record reveals that the district court did not sentence at the bottom of the guideline range or if the court rejected arguments by the defendant that would have resulted in a lower sentence, we will presume that the defendant suffered prejudice from the error, i.e. that the error affected the defendant's substantial rights." *Id.* at 353.

Jimenez-Laines's guideline range for revocation imprisonment was 12-18 months.[3] He was sentenced to 12 months. At no time did he argue that the court should have departed downward from the range or that the range should have been calculated differently. Thus, under *Reyna*, Jimenez-Laines is not entitled to a presumption of prejudice.

Jimenez-Laines contends that he is entitled to a presumption of prejudice, because his twelve-month revocation sentence, though at the bottom of the guideline range, is also the statutory maximum.[4] He calls our attention to *United States v. Magwood*, 445 F.3d 826, 829 (5th Cir. 2006), in which we recognized

---

[3] *See* 8 U.S.C. § 1326(b)(2) (stating that illegal reentry after deportation following an aggravated felony conviction is punishable by up to 20 years' imprisonment); U.S.S.G. § 7B1.1-(a), (b) (providing that conduct violating supervised release that is punishable by greater than one but less than 20 years is a Grade B violation; where there are multiple charged violations, the grade is determined by the violation with the most serious grade); Judge's Sentencing Options Worksheet, Appellee's Br., Attachment B (listing Jimenez-Laines's criminal history category as IV); U.S.S.G. § 7B1.4(a) (explaining that Grade B with Criminal History IV yields a guideline range of 12-18 months for revocation imprisonment).

[4] Jimenez-Laines's original underlying offense was illegal reentry by a deported alien. 8 U.S.C. § 1326(a). That offense is a Class E felony. 18 U.S.C. § 3559(a)(5). The maximum revocation sentence permitted for a Class E felony is one year. 18 U.S.C. § 3583(e)(3).

a presumption of prejudice under *Reyna* for a defendant denied allocution because he "was not sentenced either at the bottom of the guideline range . . . or at the statutory minimum." According to Jimenez-Laines, *Magwood* extended *Reyna* by requiring a presumption of prejudice in revocation sentences where allocution was denied unless the sentence is *both* at the bottom of the guideline range *and* at the statutory minimum.

We disagree. First of all, *Magwood* involved a revocation sentence that exceeded the guideline range, which distinguishes it from this case. *Id.* Second, and most importantly, *Magwood*'s discussion about statutory minima must be read as *dictum*, which was as inapplicable in that case as it is here, for the reason that there is no such thing as a statutory minimum for a supervised-release revocation sentence.[5]

To read *Magwood* as Jimenez-Laines suggests, then, would require us to presume prejudice every time a defendant who was denied allocution at revocation received any sentence above zero months. *Reyna* never went so far. It contemplated that at least some––and perhaps all––defendants who were denied allocution at revocation sentencing, but who nevertheless received a sentence at the bottom of the guideline range, and who never even advanced arguments that might have resulted in a lower sentence, would not be owed a presumption of prejudice on plain-error review. Jimenez-Laines falls squarely within this category, and so we afford him no presumption of prejudice under *Reyna*. Having made no affirmative case that his substantial rights were affected by his inability to allocute, Jimenez-Laines has not met his burden of showing that the district court committed reversible plain error.

---

[5] *See* 18 U.S.C. § 3583(e)(3) (establishing statutory maxima, but not minima, for revocation sentences).

## C. Sentencing Factors

Jimenez-Laines contends that the district court failed to consider the sentencing factors in § 3553(a) before imposing the revocation sentence. The record shows that Jimenez-Laines is correct. Further, the error is plain. *See* 18 U.S.C. § 3583(e).

Jimenez-Laines has not shown, however, that the error affected his substantial rights. He offers no argument for why consideration of the § 3553(a) factors might have persuaded the court to depart downward from the guideline range.[6] Therefore, he has not met his burden of showing his substantial rights were affected by the error.

## D. Cumulative Effect

Jimenez-Laines argues that even if the aforementioned errors do not individually meet the standard of plain error review, their cumulative effect should compel us to vacate and remand. He points us to *United States v. Riddle*, 103 F.3d 423, 434 (5th Cir. 1997), in which we concluded that the cumulative effect of four evidentiary errors was "so harmful that [it] mandate[d] reversing [the] conviction," because "[t]urning these rulings in a different direction would have produced a very different trial." We noted, for instance, that the jury had been exposed to hours of prejudicial testimony and that a key defense witness had been denied the opportunity to explain how suspect-sounding behavior was actually normal banking procedure. *Id.* at 434-35.

It appears that in *Riddle*, unlike here, the defendant properly preserved

---

[6] In his reply brief, Jimenez-Laines draws an apples-to-oranges comparison between his revocation sentence and the criminal sentence for illegal reentry imposed at the same hearing. Jimenez notes that before imposing the criminal sentence, the court considered the § 3553(a) factors and imposed a sentence of twenty-five months—one month above the bottom of the guideline range. In the revocation case, however, the court sentenced him to the statutory maximum of one year. What Jimenez-Laines fails to mention is that for his revocation sentence, the statutory maximum was still was at the very bottom of the range.

the alleged errors. But even if we leave aside the differing standards of review, Jimenez-Laines still has not explained how an opportunity to allocute, combined with the court's consideration of the § 3553(a) factors, would have produced a "very different" revocation sentencing. Nor do we see how Jimenez-Laines could make such an argument. We therefore decline to vacate the sentence because of cumulative error.

AFFIRMED.